IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROVIC INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 3:03-cv-0366 (SRU) |
| v. | ) |
| | ) |
| THE BLACK & DECKER CORPORATION | ) January 21, 2004 |
| | ) |
| Defendant. | ) |
| | ) |

**ROVIC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

      Black & Decker's Response to Plaintiff RoVic's Motion for Summary Judgment fails to rebut the summary case for trademark infringement set out in RoVic's analysis of the Polaroid factors in its Memorandum-in-Chief. Instead, Black & Decker relies entirely upon the inadequate and trivial facts presented in support of its own Motion for Summary Judgment and the baseless denials of contrary facts submitted by RoVic in Opposition to Black & Decker's Motion for Summary Judgment.

      As examples, on pages 2 and 3 of Black & Decker's Reply in Support of its Motion for Summary Judgment (Docket No. 27), Black & Decker lists a series of alleged RoVic admissions which collectively do not support denial of RoVic's pending Motion nor granting of Black & Decker's contrary Motion. The principal issue is whether a likelihood of confusion arises by virtue of Black & Decker's sale of a cleaning solution bearing the SCUM BUSTER label in its Deluxe Cleaning Kits. 15 U.S.C. § 1114. RoVic

has shown an instance of actual confusion, which is highly indicative of a likelihood of confusion.

It is irrelevant that RoVic's sales from year to year are small or mostly limited to a specific geographic area of the United States compared to Black & Decker's sales. Apparently Black & Decker believes that since it is a relatively large company, Black & Decker is free to trample on and appropriate for itself the trademark rights of RoVic with impunity.

It is also irrelevant that Black & Decker's product and RoVic's product are not sold through identical retail outlets. The issue in trademark infringement cases is confusion of source, not identity of retail outlets.

The use of a well-known house mark does not avoid confusion, and, in fact, contributes to the confusion in a reverse confusion case as here where the consumer believes that products originate from the larger infringer, not the smaller, true owner and registrant of the mark. Certainly the placement of RoVic's name on its own product is irrelevant to the confusion created when Black & Decker places RoVic's mark on substantially the same product manufactured and sold by Black & Decker.

What is relevant is that RoVic has been marketing its general purpose cleaning solution under the SCUM BUSTER trademark since 1986. Black & Decker sought and obtained permission from RoVic in 1996 to apply the mark to a power scrubber machine. In 2001, without RoVic's permission and, in fact, without even contacting RoVic, Black & Decker proceeded to expand the use of the mark to its own cleaning solution for no admitted marketing purpose other than the fact that the cleaning solution

was "kind of thrown in at the end". (Exh. E-1, Hamilton Depo., pp. 39, 201-203)   The inconsistency of Black & Decker's rightful request to RoVic in 1996 for permission to apply the mark to a machine, but not to a "Deluxe Package" with a "cleanser sample" already under consideration (Exh. W, Bases Market Simulator, p. iii), and then the total disregard of RoVic in 2001 when Black & Decker decided to apply the mark to a deluxe cleaning kit with a cleaning solution, unravels and exposes Black & Decker's flawed defense of non-infringement.  Black & Decker's denials of critical facts are simply not credible nor founded on cognizable legal grounds.

In the alleged admissions on page 2 of Black & Decker's Reply (Docket No. 27) and elsewhere (p. 4), Black & Decker attempts to distinguish between household uses and commercial uses of cleaning solutions, as if such a distinction were somehow sufficient to avoid confusion.  But the facts in this case do not even support the supposed distinction.  Nothing prevents Black & Decker's cleaning solution from being used by a commercial service.  We know that Black & Decker's Deluxe Cleaning Kit was purchased and used by Hedy's Home & Office Maintenance (Exh. A-1, Reichelt Depo., pp. 84–88), which also has used RoVic's SCUM BUSTER cleaning solution for many years.  We also know that RoVic sells its SCUM BUSTER cleaning solution to end users, including building owners and housewives. (Exh. A-1, Reichelt Depo., p. 31). Consequently, the distinction between commercial and household uses of the cleaning solutions is fictitious.  Both solutions clean regardless of where the dirt may exist, or who uses the solutions.

The more critical issue is where and to whom the cleaning solutions are sold. It is undisputed that both are sold commercially at retail outlets directly to end users, the same class of customers. The word "commercial" includes as one of its definitions "designed for a large market" (Exh. Z, <u>Merriam-Webster's Collegiate Dictionary</u> (10th ed. 1993, p. 231)). If anybody's product is "commercial" by this definition, it is certainly Black & Decker who sells its product through the large box retailers, such as Wal-Mart, Home Depot, K-Mart, Target, Sears and Ace Hardware.

When Mr. Reichelt was asked if RoVic ever intended to enter a consumer market with its SCUM BUSTER cleaning solution, he replied emphatically, "we do now, through stores . . . no, not through retail stores, through our own stores." (Exh. A-1, Reichelt Depo., p. 237). Mr. Reichelt was obviously distinguishing between the big box retail stores used by Black & Decker and RoVic's own retail stores expressly designated as such in RoVic's Response to Interrogatory No. 2; (see Exh. O, p. 5). Hence Black & Decker's statement on page 2 of its Reply that RoVic has no intention of approaching the retail consumer stores for resale to the consuming public is misleading and premised entirely upon the word "resale" since RoVic sells directly to the consumers through its own stores.

In a further misstatement of the facts, Black & Decker asserts on page 4 of its Reply that RoVic has provided no evidence to support its claim of household sales. Black & Decker is not referring to door-to-door sales, but instead to consumers who live in households since Black & Decker itself only sells through the large box retailers such as Wal-Mart and K-Mart. However, Mr. Reichelt testified directly that RoVic's customers

include not only commercial cleaning businesses, but "any person who cleans that building, it may be owners, it may be contract cleaners, but in general we sell to the end user, not redistribute. We sell to a lot of housewives that walk in the stores." (Exh. A-1, Reichelt Depo., p. 31). In response to a question concerning top SCUM BUSTER customers of RoVic, Mr. Reichelt stated, "Cash Customer Taxable Connecticut is walk-in store business. That's our top customer." (Exh. A-1, Reichelt Depo., p. 121)

Hence Black & Decker's statement that RoVic has presented no evidence to support household sales or homeowner sales (see Response to Factual Statement Nos. 25 and 26, Black & Decker's Local Rule 56(a)(2) Statement) is incredible and directly refuted by Mr. Reichelt's testimony. Black & Decker tacitly acknowledges the credibility of Mr. Reichelt's testimony in this regard since Black & Decker asked Mr. Reichelt to identify RoVic's customers (Exh. A-1, Reichelt Depo., pp. 31, 121). Hence Black & Decker's statements regarding the lack of evidence are both not credible, and refuted by evidence of record.

RoVic's evidence of actual confusion is well founded on admissible evidence and not hearsay as alleged by Black & Decker on page 7 of its Reply and the responses in Black & Decker's Rule 56(a)(2) Statement, ¶¶ 60-66. The hearsay and admissibility issues are addressed here by discussing the statements and objections to ¶¶ 60-66.

Paragraph 60 simply states that Hedy Palliardi has been a long-standing customer of RoVic who has been buying RoVic's SCUM BUSTER cleaning solution for over 18 years. (Exh. A-1, Reichelt Depo., pp. 84-88). The precision of Mr. Reichelt's testimony as to the number of years being 17, 18, or 20 does not represent a conflict

that would render his testimony inadmissible. The point is that Ms. Palliardi is a long-standing customer who has been buying the SCUM BUSTER cleaning solution from RoVic for many years.

Mr. Reichelt's statements are facts that are well within the knowledge of RoVic and do not constitute hearsay. RoVic certainly has the collective knowledge of who its customers are and what they buy. Moreover, the statement in ¶ 60 is not hearsay as defined in the Federal Rules of Evidence (F.R.E.). "Hearsay" is, "a statement, other than one made by the Declarant…" as defined in F.R.E. Rule 801(c). Paragraph 60 does not meet the definition and therefore is not inadmissible hearsay.

Paragraph 61 states that Ms. Palliardi runs a maid service with personnel thoroughly trained in use of the RoVic SCUM BUSTER cleaning solution. (Exh. A-1, Reichelt Depo., pp. 84-86). The statement is a simple fact defining the status of one of RoVic's long-standing customers. Certainly RoVic does not sell its SCUM BUSTER or other products in a vacuum. As a retailer of products RoVic has a significant interest in who its customers are, what they do with RoVic's products and why they buy them, all facts that would routinely be sought by any retailer of sanitation and janitorial supplies.

Information about customer identify and why customers buy certain products is the type of information that is uncovered in routine sales contacts and marketing surveys, formal or informal. Knowledge of a customer's business, particularly a long-standing customer, is the life blood of any retailer, such as RoVic, and would be known by any retailer who shows the least bit of diligence in marketing its products. Moreover,

because of the reliability of marketing evidence, marketing reports are recognized exceptions to the hearsay rule. F.R.E. § 803(17).

Paragraph 62 states that Ms. Palliardi buys the Black & Decker SCUM BUSTER power scrubbers for the maids to use in her cleaning service. Apart from the statements that Ms. Palliardi is a customer of RoVic (see discussion of ¶ 60 above) and that she runs a cleaning service (see discussion of ¶ 61 above), ¶ 62 and the remaining ¶¶ 63-66 all relate to Ms. Palliardi's confusion that was witnessed by Mr. Reichelt when she showed up at RoVic's place of business in Manchester one day and displayed the 4oz. bottle of Black & Decker SCUM BUSTER cleaning solution from a Black & Decker Deluxe Cleaning Kit that she had purchased for her cleaning personnel.  The statements are admissible because they all pertain to Mr. Reichelt's perception of Ms. Palliardi's confusion and state of mind as to the source of the Black & Decker cleaning solution, the concern that her cleaning personnel would also be confused and substitute the Black & Decker cleaning solution for RoVic's SCUM BUSTER cleaning solution, and her dismay when she was told by Mr. Reichelt that Black & Decker's SCUM BUSTER cleaning solution was not the same as RoVic's SCUM BUSTER cleaning solution and did not come from RoVic.  Mr. Reichelt's testimony is admissible because either the statements are not offered to show the truth of the facts stated, or they define Ms. Palliardi's state of mind concerning the source and reasons for her confusion when he talked directly to her. (See F.R.E. Rule 803(3) "Hearsay Exceptions - Then Existing State of Mind").  The statement in ¶ 62 that Ms. Palliardi bought the Black & Decker cordless power scrubber goes directly to the source of the Black & Decker cleaning

solution and Ms. Palliardi's confusion. It is not particularly critical that the statement be accepted as true, although as indicated in conjunction with ¶ 61 above, Mr. Reichelt, as a retailer, certainly should have known why and how a long-standing customer such as Ms. Palliardi was utilizing the RoVic SCUM BUSTER cleaning solution she had been purchasing for many years.

The statement in ¶ 63 that Ms. Palliaridi was confused is obviously a mental impression of Mr. Reichelt from the circumstances that he perceived when Ms. Palliardi showed up in his store and complained about the Black & Decker SCUM BUSTER cleaning solution. Anecdotal testimony of sales personnel concerning complaints received from customers when offered to establish instances of actual confusion is admissible since it is not hearsay being offered to prove the truth of an out-of-court statement. "There is no hearsay problem." Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 1003 (2d Cir. 1997). Such testimony is also admissible to show Ms. Palliardi's state of mind under the hearsay exception in Rule 803(3). Id. at 1004.

The statements in ¶¶ 64 and 65 concerning Ms. Palliardi's purchase of RoVic's and Black & Decker's cleaning solutions are admissible for the same reasons as stated above with respect to ¶¶ 62 and 63, mainly RoVic's general knowledge of its customer base and the basis for Ms. Palliardi's confusion as perceived by Mr. Reichelt. The statement in ¶ 65 that Ms. Palliardi was afraid that her maids were going to use the Black & Decker cleaning solution in place of RoVic's SCUM BUSTER is admissible as Mr. Reichelt's perception of her confused state of mind under Rule 803(3).

Paragraph 66 likewise is admissible because even if it reflects a statement from

Ms. Palliardi, it also confirms Ms. Palliardi's basic confusion as perceived by Mr. Reichelt. The statement thus falls clearly within the exception of Rule 803(3).

Accordingly, all of the statements in ¶¶ 61-66 are admissible because the statements represent credible evidence that would be possessed by Mr. Reichelt as a retailer of SCUM BUSTER cleaning solution to long-standing customers such as Ms. Palliardi, or by the actual confusion displayed by Ms. Palliardi when he met face-to-face with her to respond to her confusion and complaint.

**BREACH OF CONTRACT**

Black & Decker attempts in its Reply (Docket No. 27), page 9 to justify the breach of the Consent To Use and Registration agreement (Exh. C) by asserting the distinction between the commercial nature of RoVic's SCUM BUSTER cleaning solution and the cleaning solution in the form of a rug and carpet shampoo enclosed in Black & Decker's Deluxe Cleaning Kit. The fiction of the distinction has been addressed above.

Still further, the inconsistency between Black & Decker's request and payment for permission to apply the SCUM BUSTER mark to a power scrubber machine in 1996, but complete disregard of RoVic when Black & Decker decided to apply the mark to a cleaning solution in 2001 cannot be dismissed as anything short of a breach of the Consent to Use and Registration agreement. Black & Decker had already given consideration to a "Deluxe Package" with a "cleanser sample" in 1996 when it entered into the Consent agreement. (Exh. W p.iii). Black & Decker obviously knew that it would not receive permission to sell any type of kit with a cleanser sample under the

9

SCUM BUSTER trademark. Hence, no such permission was requested in 1996 or 2001.

Black & Decker's bad faith in applying the mark to its carpet and rug shampoo cannot be dismissed as an oversight, since Black & Decker received a cease and desist letter from RoVic (Exh. N), categorically refused to comply (Exh. U), and has continued to sell its Deluxe Cleaning Kit with the cleaning solution without abatement.

**POLAROID FACTORS**

RoVic has shown in its Memorandum-in-Chief that the analysis of each of the eight Polaroid factors plus the additional ninth factor, public safety, leads directly to a finding of trademark infringement by Black & Decker. Though none of the factors is controlling, three of the factors, strength of the mark, similarity of the mark and proximity of the mark, are not only most significant, but when analyzed leave virtually nothing in dispute. The strength of the mark has been verified by the Black & Decker request and payment to use the mark on a cordless power scrubber. The marks are identical, and both products are cleaning solutions. Black & Decker has virtually no defenses to the three most important Polaroid factors which lead summarily to a finding of infringement.

           ROVIC INC.

           By _____
             John C. Linderman (ct04291)
             Wm. Tucker Griffith (ct19984)
             McCormick, Paulding & Huber LLP
             CityPlace II, 185 Asylum Street
             Hartford, CT 06103-4102
             Tel.: 860-549-5290 - Fax: 860-527-0464
             Plaintiff's Attorneys

**Certificate of Service**

I hereby certify that on the ___ day of January 2004, a true copy of the foregoing ROVIC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT was served by First Class Mail, postage prepaid to the following counsel:

>Raymond P. Niro, Jr.
>Niro, Scavone, Haller & Niro
>181 West Madison Street - Suite 4600
>Chicago, IL 60602-4515

>Patricia E. Reilly
>TYLER, COOPER & ALCORN
>205 Church Street
>New Haven, Connecticut 06509

By_____
      John C. Linderman